UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DIANDRA DAVIS AND
LA'DHARION DAVIS                                    PLAINTIFFS

VS.                        CIVIL ACTION NO. 3:22-CV-439-TSL-RPM

DEONTA YOUNG, IN HIS
INDIVIDUAL CAPACITY                                 DEFENDANT

<u>MEMORANDUM OPIION AND ORDER</u>

This cause is before the court on the motion of defendant Deonte Young for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiffs Diandra Davis and La'Dharion Davis have responded in opposition to the motion.  The court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendant's motion should be granted in part and denied in part, as set forth below.

Plaintiffs have brought the present action against former City of Canton police officer Deonte Young, in his individual capacity, under 42 U.S.C. § 1983.  Diandra Davis asserts claims against Young for unlawful arrest, malicious prosecution and excessive force in violation of her rights under the Fourth and Fourteenth Amendments; La'Dharion Davis asserts a Fourth Amendment claim for unlawful arrest.

Facts

According to the pertinent allegations of the complaint,
which are supported by the sworn testimony of La'Dharion, on the
afternoon of May 30, 2020, La'Dharion, two of his cousins, Brian
Davis and Dharion Davis, and a friend, D'Andre McInnis (who was
the boyfriend of his aunt, coplaintiff Diandra Davis), decided to
walk from the apartment complex where La'Dharion resided with
Diandra to a nearby convenience store to buy snacks.  As they were
walking through the parking lot of the Madison County courthouse,
which was across the street from the apartment complex and
directly adjacent to the parking lot of the Canton Police
Department, the young men observed a number of police officers
congregated in the police station parking lot.  La'Dharion has
estimated there were about ten officers; defendant Young has
testified he believed there were four or five.  One of the
officers, who claimed that one of the young men was "sagging,"
yelled at him to pull his pants up.  La'Darion testified that the
one individual with sagging pants promptly complied, and yet
defendant Young yelled at the group, "You not hear him tell you to
pull your pants up?"  The officers then got in their cars and
drove to the courthouse parking lot, where they exited the
vehicles and approached the young men.  Young asked them for their

2

names and IDs.  While three of them complied, La'Dharion, who was sixteen at the time and did not have a driver's license, stated he did not have an ID.  Young asked his name and age; but La'Dharion stated he had done nothing wrong and refused to answer Young's questions, responding instead, "I don't know" when again asked his name and age.  Young told La'Dharion he was going to make an example of him and that La'Dharion was going to jail.  Young put La'Dharion in handcuffs, placed him in the back of the police car and drove to the police station.  By that time, La'Dharion had relented and given his name.  Once there, Young took La'Dharion to a back room, where he remained handcuffed while Young and other officers continued to ask him his age and his mother's name.

In the meantime, Dharion Davis, one of La'Dharion's companions, who was the son of plaintiff Diandra Davis, called his mother and told her she needed to come to the police station right away.  Upon arriving at the police station, Diandra was met by Dharion, Brian Davis and her boyfriend, D'Andre McInnis, who told her what had happened.  The four of them entered the lobby of the police station, where Diandra took a seat and waited to speak with someone about La'Dharion.  Defendant Young entered the lobby from a back room after a few minutes.  As related by Diandra, when Young appeared, Dharion, seated next to her, told her, "That's the

3

dude right there."  Young then ran up to Dharion and said, "I didn't do s*** to you boy."  Diandre told Young, "Watch how you talk to my son."  Young responded, telling Diandre, "Tell your son to watch what the f*** he says to me."  She responded, "Who the f*** are you talking to?"  The two exchanged more words; and while Diandra has testified that she does not remember everything that was said, she admitted they both used profanity and that Young told her, "Cuss one more time, yo ass going in the back."  She told him, "You're cussing at me, so what you give is what you get."  Young reached out to grab her but she stepped back, telling him he did not need to put his hands on her; she could walk to the back herself.  As Young escorted her to the back, the two continued to exchange words, including cussing at each other.

Once they reached the back room, Young placed Diandra in handcuffs.  And although Young claims that Diandra repeatedly pulled away as he tried to handcuff her, Diandra testified that she was compliant and did not pull away or resist in any way.  Then, as she stood there, with hands cuffed behind her back, surrounded by several officers, Young kicked her feet out from under her, causing her to fall to the ground flat on her back, striking her head on the concrete.  La'Dharion, who witnessed Young kick his aunt's legs and cause her to fall, asked Young why

4

he had done that.  Young responded that Diandra hit him.  Indeed, in this lawsuit, he claims that he "took [Diandra] to the ground" because she elbowed him; but La'Dharion testified that Diandra did not hit or elbow Young.  And Diandra likewise has testified that she did not touch Young at all.

La'Dharion was not charged with any crime and after Diandra was taken from the police station, his handcuffs were removed and he was released to his Aunt Brenda, who had been called to come pick him up.  Diandra was charged with public profanity, in violation of Mississippi Code Annotated § 97-29-47; resisting arrest, in violation of Mississippi Code § 97-9-73; disorderly conduct (i.e., failure to comply with a police officer), in violation of Mississippi Code Annotated § 97-35-7(1); and simple assault against a police officer, in violation of Mississippi Code § 97-3-7(1).  During her trial of the charges, the court dismissed the assault and public profanity charges and she was found not guilty of the charges of disorderly conduct and resisting arrest.

Young contends in his motion that he is entitled to summary judgment as to La'Dharion's false arrest claim because the undisputed evidence establishes that La'Dharion was only detained, not arrested, but that even if La'Dharion was arrested, there was probable cause for the arrest and therefore, there was no Fourth

Amendment violation.  He further argues that he is entitled to
qualified immunity even if he was mistaken about whether probable
cause existed.

He similarly argues that Diandra has no viable claim for
false arrest because he had probable cause to arrest her for one
or more offenses; and even if probable cause was lacking, he is
entitled to qualified immunity because there was reasonable basis
to believe there was probable cause.  He further argues that he is
entitled to summary judgment on Diandra's excessive force and
malicious prosecution claims because Diandra cannot establish the
elements of these claims or overcome his qualified immunity.

Qualified Immunity

"The doctrine of qualified immunity protects government
officials from civil damages liability when their actions could
reasonably have been believed to be legal." Morgan v. Swanson,
659 F.3d 359, 370 (5th Cir. 2011) (en banc).  "Qualified immunity
'gives government officials breathing room to make reasonable but
mistaken judgments about open legal questions.'" Lane v. Franks,
573 U.S. 228, 243, 134 S. Ct. 2369, 189 L. Ed. 2d 312 (2014)
(quoting Ashcroft v. al-Kidd, 563 U.S. 731, 743, 131 S. Ct. 2074,
179 L. Ed. 2d 1149 (2011)).  Once a defendant raises a qualified
immunity defense, the plaintiff has the burden to overcome that

defense.  To do so, she must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Morgan v. Swanson, 659 F.3d 359, 371 (5th Cir. 2011) (en banc).

Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Typically, on a summary judgment motion, the moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  However, a government official's good faith assertion of a qualified immunity defense alters the usual summary judgment burden of proof. Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005).  Once the official asserts qualified immunity, the plaintiff has the burden

to show there is a genuine and material dispute as to whether qualified immunity applies.  Castorena v. Zamora, 684 Fed. Appx. 360, 363 (5th Cir. 2017) (citations omitted).  See also Thompson v. Upshur Cty., TX, 245 F.3d 447, 456 (5th Cir. 2001) (official not required to demonstrate that he did not violate clearly established federal rights; rather, burden is on plaintiff to establish such violation).

When evaluating whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398-99 (5th Cir. 2008).  In so doing, the court must view all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor, even on a summary judgment motion based on qualified immunity.  See Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010) ("The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor.").

Analysis

False Arrest – La'Dharion

A plaintiff asserting a claim of false arrest in violation of the Fourth Amendment must prove that he/she was arrested without

8

probable cause.  Anokwuru v. City of Houston, 990 F.3d 959, 963 (5th Cir. 2021).  The Fourth Amendment's constitutional protection "varies with the type of seizure at issue." Lincoln v. Turner, 874 F.3d 833, 840 (5th Cir. 2017).  "[A]n investigatory stop is a brief seizure that must be supported by reasonable suspicion," id., that is, reasonable, articulable suspicion, based on objective facts, that the individual is involved in criminal activity, Brown v. Texas, 443 U.S. 47, 51, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979).  "[A] full scale arrest ... must be supported by probable cause." Lincoln, 874 F.3d at 840 (quoting United States v. Massi, 761 F.3d 512, 520 (5th Cir. 2014)).  "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." Flores v. City of Palacios, 381 F.3d 391, 402 (5th Cir. 2004).  "To determine whether an officer had probable cause for an arrest, '[the court] examine[s] the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to"probable cause.'" District of Columbia v. Wesby, 583 U.S. 48, 56–57, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018) (quoting Maryland v. Pringle, 540 U.S. 366, 371,

124 S. Ct. 795, 157 L. Ed. 2d 769 (2003) (internal quotation omitted)).  "Probable cause 'is not a high bar.'"  Id. (quoting Kaley v. United States, 571 U.S. 320, 338, 134 S. Ct. 1090, 1103, 188 L. Ed. 2d 46 (2014)).  It "'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'"  Id. (quoting Illinois v. Gates, 462 U.S. 213, 243-44, n.13, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).  The bar for qualified immunity is even lower: "Actual probable cause is not necessary; merely arguable probable cause" – that is "'reasonable but mistaken probable cause'" – "is sufficient to trigger qualified immunity." Petersen v. Johnson, 57 F.4th 225, 232 (5th Cir. 2023) (quoting Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 207 (5th Cir. 2009)).  See also Harris v. Dobbins, Civ. Action No. 3:22-CV-479-TSL-MTP, 2023 WL 2899994, at *6 (S.D. Miss. Apr. 11, 2023) (officer who reasonably but mistakenly concluded reasonable suspicion existed for investigatory detention will have qualified immunity).

As stated, the parties dispute whether La'Dharion was arrested.  "An arrest occurs when, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'"  Massi, 761 F.3d at 522 (citing United States v. Mendenhall, 446 U.S. 544, 554, 100 S.

10

Ct. 1870, 64 L. Ed. 2d 497 (1980)).  See Freeman v. Gore, 483 F.3d 404, 413 (5th Cir. 2007) (explaining that police detention constitutes an arrest "if a reasonable person in the suspect's position would understand the situation to be a restraint on freedom of the kind that the law typically associates with a formal arrest.").  An investigatory detention "can, due to its duration, transform into the equivalent of an arrest."  Massi, 761 F.3d at 522 (quoting United States v. Brigham, 382 F.3d 500, 506–07 (5th Cir. 2004) (en banc)) (investigatory stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges.").

La'Dharion has testified that he was handcuffed while in the courthouse parking lot, placed in Young's police car and driven across the parking lot to the police station, where he was taken to the booking area in the back and continued to be held in handcuffs while he was questioned by officers until he was eventually allowed to leave.  La'Dharion estimated that the encounter lasted about forty minutes.  Young denies that La'Dharion was handcuffed at any point, but he agrees that he transported La'Dharion to the police station and that he was held in the booking area for a period of time.  Young argues, though,

that even if La'Dharion's version of the facts is assumed to be true, La'Dharion was merely detained, and not arrested, and that in any event, there was probable cause for his arrest.

Of course, on a motion for summary judgment, the court is bound to accept as true the nonmovant's version of the facts, if supported by record evidence.  Here, it is clear that under La'Dharion's version, which is supported by his sworn deposition testimony, La'Dharion was arrested.  It is true, as Young points out, that "[h]andcuffing a suspect does not automatically convert an investigatory detention into an arrest requiring probable cause."  United States v. Jordan, 232 F.3d 447, 450 (5th Cir. 2000) (citing United States v. Sanders, 994 F.2d 200, 206 (5th Cir. 1993)).  But La'Dharion was not merely handcuffed; he was handcuffed, transported to the police station and held there for a half hour or longer.  See Freeman, 483 F.3d at 413 (concluding that arrest occurred where officers handcuffed the plaintiff, placed her in "the back of [a] police car," and "left [her] in the car for some 30 to 45 minutes"); see also Zinter v. Salvaggio, 610 F. Supp.3d 919, 942–43 (W.D. Tex. 2022) (citations omitted) (observing that "by 2018, a bevy of courts had held that officers arrest a suspect when (1) they handcuff him, (2) transport him to a secured location, and (3) hold him for more than 45 minutes").

12

Young acknowledged in his deposition that once La'Dharion was placed in the police car to be transported to the police station, he was not free to leave.  Despite this, he maintains that La'Dharion was never arrested but merely detained.  The law is clear that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."  Turner v. Lieutenant Driver, 848 F.3d 678, 693 (5ᵗʰ Cir. 2017) (quoting Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983)).  "There is 'no rigid time limitation' on investigative stops, but '[i]n assessing whether a detention is too long in duration to be justified as an investigative stop, ... it [is] appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'"  Id. (quoting United States v. Sharpe, 470 U.S. 675, 685–86, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985)).  In this case, though, there was never a basis to detain La'Dharion, even temporarily.  According to Young's testimony, when the officers first approached La'Dharion and his companions, the only suspected offense was that one of the young men was "sagging," in violation of a City of Canton ordinance that prohibited "wear[ing] pants four inches top of the hip and

13

exposing the skin or undergarments." Canton City Ordinance § 22-16.2. La'Dharion has testified, without contradiction, that his pants were not sagging;[1] and there is no evidence that he was suspected of committing any other offense. Young has testified that his only basis for "detaining" La'Dharion was La'Dharion's failure to identify himself in response to officers' commands. Young, however, has acknowledged that La'Dharion was not required to identify himself in response to the officers' requests for identification unless he were reasonably suspected of committing an offense. See Harrell v. State, 109 So. 3d 604, 607 (Miss. Ct. App. 2013) (officer who stopped individual to obtain his name and social security number violated the individual's Fourth Amendment rights where the officer lacked any reasonable suspicion to believe the individual had committed or was committing any crime). As there was no basis for suspecting La'Dharion of committing any offense, Young had no basis on which to detain or arrest him for failing or refusing to identify himself.[2]

---

1   Young testified that he recalls that one of the young men had sagging pants, but he did not know whether La'Dharion had sagging pants. La'Dharion's testimony is clear: his pants were pulled up and not sagging.

2   Young admitted in his deposition that the only reason he transported La'Dharion to the police station was because La'Dharion would not identify himself. Young admitted, "[I]f I was talking to an individual that had not done anything wrong, hadn't committed a crime, then I would say that he's not required

Although Young, when questioned in his deposition, offered no other potential basis for detaining or arresting La'Dharion, he now argues in his motion that by responding, "I don't know," to officers' questions about his identity, La'Dharion violated Mississippi Code Annotated § 97-9-79, which states, "Any person who shall make ... a false statement ... as to his identity ... or other identifying information to a law enforcement officer in the course of the officer's duties with the intent to mislead the officer shall be guilty of a misdemeanor[.]"  Clearly, however, Young had no probable cause, or arguable probable cause to believe La'Dharion violated the referenced statute.  Magee v. Pike County, No. 5:19-CV-52, 2020 WL 1584409, at *4 (S.D. Miss. Apr. 1, 2020), cited by Young, is clearly distinguishable and does not support a contrary conclusion.  The plaintiff in Magee, who was already under arrest for possession of marijuana, withheld information about the identity of her boyfriend when she knew that officers were looking for an African-American male in the area who was suspected of committing a crime.  Id. at *4.  Those facts are not even arguably analogous to the facts of the present case.

---

to identify himself to me."  Since La'Dharion was not required to identify himself, then he could not be further "detained" or arrested for failing or refusing to do so.

Young also argues in his motion that he had probable cause to arrest La'Dharion for violating Canton City Ordinance § 33-326, which makes it a misdemeanor for any person to "cross a roadway at any place other than by a route at right angles to the curb or by the shortest route to the opposite curb except in a crosswalk."[3] Young notes that La'Dharion was presented a map in his deposition on which he drew the route he and his companions took upon leaving the apartment complex; on the map, he indicated that he and his companions crossed the street to the courthouse parking lot diagonally and not at a crosswalk or by the shortest route.

Young notes that an officer may justify an arrest by showing probable cause for any crime, even if it is "only an after-the-fact justification." Sam v. Richard, 887 F.3d 710, 715-16 (5th Cir. 2018). However, the determination of whether there was probable cause for an arrest is based on the "totality of facts and circumstances within [the] police officer's knowledge *at the moment of arrest*." Flores v. City of Palacios, 381 F.3d 391, 402 (5th Cir. 2004) (emphasis added); see also Voss v. Goode, 954 F.3d 234, 238-39 (5th Cir. 2020) (quoting Kohler v. Englade, 470 F.3d

---

3  See Canton Ordinance § 33-19 (stating that it is a misdemeanor for "any person to do any act forbidden or fail to perform any act required by this chapter or any other traffic law, ordinance or regulation.").

1104, 1109 (5th Cir. 2006)) ("Probable cause exists when officer *is aware of* 'reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe' that a crime has been or will be committed.'"). Young has testified that he first observed La'Dharion and his companions when they were in the courthouse parking lot, after they had crossed the street.  Thus, the totality of the facts and circumstances known to Young did not include the fact that La'Dharion and his companions had committed a jaywalking offense. Therefore, he did not arguably have probable cause to arrest La'Dharion for violating the City's jaywalking ordinance.

Based on the foregoing, Young's motion for summary judgment on La'Dharion's false arrest claim is denied.

<u>False Arrest: Diandre Davis</u>

Diandra Davis was charged with multiple offenses, including misdemeanor charges of public profanity, disorderly conduct and resisting arrest and a felony charge of assault on a police officer.  "Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest"; thus "'[i]f there was probable cause for any of the charges made ... then the arrest was supported by probable cause, and the claim for false arrest fails."  <u>Price v.</u>

Roark, 256 F.3d 364, 369 (5th Cir. 2001) (quoting Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995)).  In the court's opinion, there are genuine issues of material fact as to whether Young had probable cause, or could reasonably have believed he had probable cause to arrest Diandra for any offense.

Regarding the charge of resisting arrest, Young testified that Diandra "wouldn't allow [him] to handcuff her, so [he] grabbed her arm and she kept snatching away and snatching away." Diandra, on the other hand, testified that she promptly complied with Young's directive to place her hands behind her back so she could be handcuffed and that she did not snatch away from him when he was attempting to put the cuffs on her.  Young claimed that Diandra was charged with assault because after she was handcuffed, she elbowed him in the chest (which is when and why he "took her to the ground").  Diandra, however, testified that she never touched him.

Young testified that he arrested Deandre for disorderly conduct because she continued to curse after he told her to refrain from cursing, and he arrested her for public profanity because of "her language."  The Supreme Court has long held that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."  City of

18

Houston, Tex. v. Hill, 482 U.S. 451, 462–63, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987) (stating, "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.").  See also Lewis v. City of New Orleans, 415 U.S. 130, 135, 94 S. Ct. 970, 39 L. Ed. 2d 214 (1974) (stating that "a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to fighting words.").  Mississippi courts have likewise recognized that because of the First Amendment's protection of free speech, "law enforcement officers must endure verbal abuse."  Odem v. State, 881 So. 2d 940, 948 (Miss. Ct. App. 2004) (also observing that "[l]aw enforcement officers must attempt to calm situations instead of escalate them" and "may not simply take offense to words that are expressed at them in a tense situation.").

Mississippi's disorderly conduct statute states, in part,

Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for a violation of the law, to:
        …

19

> (i)  Act or do or refrain from acting or doing as
> ordered, requested or commanded by said officer to avoid
> any breach of the peace at or near the place of issuance
> of such order, request or command, shall be guilty of
> disorderly conduct, which is made a misdemeanor....

Miss. Code Ann. § 97-35-7(1).  The Fifth Circuit has held that

"under the free speech principles recognized by both state and

federal courts, the statute may not be applied to punish a person,

or to justify his arrest, because of his spoken words only, unless

his speech constitutes 'fighting words' or falls within some other

category of speech not protected by the First Amendment."  Brooks

v. City of West Point, Miss., 639 Fed. Appx. 986, 995 (5th Cir.

2016).

The Mississippi Supreme Court has held that under the state's

public profanity statute, which makes it a misdemeanor for any

person to "profanely swear or curse, or use vulgar and indecent

language ... in any public place, in the presence of two (2) or

more persons,"  Miss. Code Ann. § 97-29-47, the use of profanity

does not warrant an arrest unless the officer has "sufficient

evidence to believe that a breach of the peace was being

threatened" or a crime was "about to be committed" or "being

committed in his presence."  Jones v. State, 798 So. 2d 1241, 1248

(Miss. 2001) (citing Terry v. State, 252 Miss. 479, 173 So. 2d

889, 891 (1965)).  The law is thus clear that "[i]n Mississippi, a

20

person cannot be arrested for 'resisting arrest, disorderly conduct, public profanity, [or] disturbing the peace' simply for cursing out a law enforcement officer." Giles v. Dedmon, Cause No. 3:21-CV-766-CWR-LGI, 2022 WL 17420387, at *4 (S.D. Miss. Dec. 5, 2022) (quoting Collins v. State, 223 So. 3d 817, 818 (Miss. Ct. App. 2017)).  See Collins v. Hood, Civil No. 1:16-cv-00007-GHD-DAS, 2018 WL 1055526, at *6 (N.D. Miss. Feb. 16, 2018) (complaint alleging that deputy arrested the plaintiff for calling him a "racist motherf----r" stated valid Fourth Amendment false arrest claim that defeated qualified immunity); Collins v. State, 223 So. 3d at 819 (officer lacked probable cause to arrest plaintiff for disturbing the peace, public profanity or disorderly conduct for calling him a "racist motherf----r"); Jones v. State, 798 So. 2d 1241, 1248 (Miss. 2001) (officer lacked probable cause to initiate arrest based on defendant's calling him a "child killing motherf-----r"); cf. Giles, 2022 WL 17420387, at *4 (granting defendant's motion for judgment on the pleadings for false arrest claim where suspect admitted he "did more than speak his mind.  He also fired his weapon in direct, intentional response to his neighbor's Sunday morning lawful firearms activity," thereby creating a breach of the public peace); Odem v. State, 881 So. 2d 940, 948 (Miss. Ct. App. 2004) (where evidence showed that defendant, not

officer, initiated confrontation, and used not just words, shouting profanities, but also combative conduct and created stalemate, jury was warranted in finding that the arrest was lawful as defendant's conduct arose to the level of "fighting words" and inciting a breach of the peace).

While Young stated in his deposition testimony that he arrested Diandra solely based on her use of profanity and continued use of profanity after he told her to stop, he argues in his motion that he reasonably believed he had probable cause to arrest her because of her "combative gesturing and irate behavior."  Young has submitted two videos purporting to depict the encounter between him and Diandra in the lobby of the police station, which Young claims shows that "Diandra aggressively rose from her chair and gestured combatively toward Young, which prompted De'Andre McInnis (Diandra's boyfriend) to hold her back." The court has viewed the videos several times, in an effort to discern exactly what occurred, but the view of the parties is partially obscured and there is no audio, making it rather difficult to see and interpret precisely what transpired.  The entire incident, from the time Young first approached Dharion to the time he arrested and began escorting Diandra to the booking area, lasted no more than twenty to twenty-five seconds.  And in

22

the court's view, it hardly seems from the videos that Diandra was "aggressive" or "combative."  It is true that she was initially seated and then stood after Young approached and evidently spoke to her son, Dharion, who was seated next to her.  But it does not seem to the court that she rose "aggressively" from her chair. And in the video, she does not appear to be "gesturing" toward Young, combatively or otherwise.  Nor does it appear to the court that she made any move toward Young such that she had to be restrained.[4]

In sum, having considered the evidence, the court is not persuaded that Young has demonstrated the absence of any genuine issue of material fact as to whether there was probable cause, or whether an officer in Young's position could have reasonably believed there was probable cause for Diandra's arrest for public profanity and/or disorderly conduct.  Accordingly, Young's motion will be denied as to this claim.

---

[4]    On a summary judgment motion, the court is not bound to accept the nonmovant's version of the facts if it is conclusively contradicted by video evidence in the record.  Crane v. City of Arlington, Texas, 50 F.4th 453, 461-62 (5th Cir. 2022).  The court, however, may only reject a nonmovant's version of facts if the video evidence "provides so much clarity that a reasonable jury could not believe his account."  Id.  That is not the case here.

<u>Malicious Prosecution - Diandra</u>

Diandra alleges that Young is liable for "violating her clearly established Fourth Amendment right to be free from malicious prosecution based on the leveling of fabricated and false charges lacking in probable cause." In <u>Guerra v. Castillo</u>, 82 F.4th 278 (5th Cir. 2023), the court affirmed the district court's dismissal of a plaintiff's malicious prosecution claim on qualified immunity grounds, finding the defendant did not violate clearly established law because Fifth Circuit caselaw "explicitly disclaimed the existence of a constitutional claim for malicious prosecution at the time of [the defendant's] alleged conduct in 2018 and 2019 and [the plaintiff] ha[d] identified no Supreme Court case law from the same period acknowledging such a claim." <u>Id.</u> at 289. The same is true here. Accordingly, Young is entitled to qualified immunity as to this claim.[5]

---

[5]   <u>Bledsoe v. Willis</u>, No. 23-30238, 2023 WL 8184814 (5th Cir. Nov. 27, 2023), cited by Diandra, does not help her position. It is an unpublished opinion that lacks precedential value. <u>See</u> <u>Garrett v. Lumpkin</u>, 96 F.4th 896, 902 (5th Cir. 2024) (citing 5th Cir. R. 47.5.4)("Unpublished opinions are, of course, non-precedential."); <u>see</u> <u>also</u> <u>Frias v. Hernandez</u>, No. 3:23-CV0550, 2024 WL 1252945, at *8 (N.D. Tex. Mar. 22, 2024)(applying <u>Guerra</u> and rejecting <u>Bledsoe</u> as nonprecedential).

Excessive Force - Diandra

The Fourth Amendment creates a "right to be free from excessive force during a seizure." Trammell v. Fruge, 868 F.3d 332, 339-40 (5th Cir. 2017) (quoting Poole v. City of Shreveport, 691 F.3d 624, 627 (5th Cir. 2012)).  "To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" Id. (quoting Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009)). Determining whether the force used was "reasonable" requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 388, 109 S. Ct. 1865, 104 L. Ed. 2d 1865 (1989).  Whether an officer's use of force was reasonable is an objective inquiry, asking whether the officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." Id. at 397, 109 S. Ct. 1865.

25

Young asserts that Diandra cannot demonstrate excessive force as she "was only tripped to the ground after she refused to obey commands and actively resisted the arrest."  That could be true, if one were to accept Young's version of the facts.  But the court is bound to accept Diandra's version.  Under her version, she did not commit *any* offense.  She did not resist arrest or refuse to obey Young's commands, and she did not elbow him in the chest or touch him in any manner; and he kicked her legs out from under her as she merely stood there, handcuffed behind her back while in the presence of several officers.  Accepting Diandra's version of the facts, there clearly was no arguable justification for Young's actions.

Young also argues that her claim fails because she suffered no more than de minimis injury or only minor injury.  Regarding the injury requirement, the Fifth Circuit has explained as follows:

> It is true that, "[t]o state a claim for excessive use of force, the plaintiff's asserted injury must be more than de minimis."  . . . Nevertheless, the injury requirement is a sliding scale, not a hard cutoff. "[T]he amount of injury necessary to satisfy [the] requirement of 'some injury' ... is directly related to the amount of force that is constitutionally permissible under the circumstances."  "[A]s long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove

cognizable when resulting from an officer's unreasonably excessive force."

Buehler v. Dear, 27 F.4th 969, 982 (5th Cir. 2022).  Diandra has presented evidence that she did sustain physical injuries as a result of being "taken to the ground" by Young, including a fractured elbow, and psychological injuries, as well.  And given that under Diandra's version of the facts, no amount of force was necessary in the circumstances presented, that is clearly sufficient to satisfy the injury requirement.

From the foregoing, it is apparent that Young is not entitled to summary judgment on Diandra's excessive force claim.

Conclusion

Based on the foregoing, it is ordered that Young's motion for summary judgment is denied, except as to Diandra's malicious prosecution claim, as to which Young has qualified immunity.

SO ORDERED this    day of May, 2024.


                                    UNITED STATES DISTRICT JUDGE

27